## Henry F. Bruns, et al., v. Maggie Welte, Administratrix.

1. RELEASE—*when personal representative barred by, given by his intestate.* A release from liability for personal injuries given by the person injured bars the personal representative of such person from maintaining an action against the party claimed to have negligently caused the same where such injuries ultimately have resulted in death.

Action on the case for death caused by alleged wrongful act. Appeal from the Circuit Court of Gallatin County; the Hon. PRINCE A. PEARCE, Judge, presiding. Heard in this court at the February term, 1905. Reversed and remanded. Opinion filed October 11, 1905.

CARL ROEDEL and E. B. GREEN, for appellants.

J. L. HOWELL, C. S. CONGER and D. M. KINSALL, for appellee.

MR. PRESIDING JUSTICE MYERS delivered the opinion of the court.

This is an action on the case brought by Maggie J. Welte, administratrix of the estate of Charles J. Welte, deceased, against appellants to recover damages for injuries resulting in the death of plaintiff's intestate alleged to have been caused by the negligence of appellants.

The declaration contained only one count and stated in substance, that on December 13, 1899, defendants were operating a saw mill engaged in the manufacture of lumber; that defendant knowingly, carelessly and negligently permitted a cut-off saw which had become broken, cracked and out of repair and dangerous to employees working about it, to be operated in the mill; that while at work under the direction of defendants, near said saw, and in the exercise of reasonable care and caution, not knowing the broken and cracked condition of the saw, and while said saw was running at a high rate of speed, the same, by reason of its broken and cracked condition, suddenly and without warning burst and broke in pieces; that one of the pieces struck said Welte and inflicted injuries from which he subsequently, on March 31, 1901, died.

To this declaration the defendant filed the general issue and three special pleas. Plea No. 2, which was the first special plea, alleged that after the committing of the wrongs and breach of duty set forth in the declaration, and in the lifetime of Welte, defendants paid him and he assented to receive from them a sum of money in full satisfaction and discharge of all claims and causes of action which he had against them. Plea No. 3 stated that in the lifetime of Welte, at the September term, 1900, of the Gallatin Circuit Court, Welte brought suit against defendants for committing the same identical grievance in the declaration mentioned; that at the same term the suit was, on the application of defendants, removed to the Circuit Court of the United States, for the Southern District of Illinois; that while said suit was pending in the United States Court, to wit, on October 12, 1900, a stipulation was entered into between Welte and defendants as follows:

" It is stipulated and agreed by the parties to this suit that the above named defendants shall pay to the plaintiff Charles Welte the sum of $1000.00, as hereinafter stated, in discharge of all liability for injuries alleged in the declaration, filed in the above entitled cause, and in full satisfaction of every claim and demand and cause of action in respect thereof, and for the consideration aforesaid this suit shall be dismissed at the cost of the defendants."

That said stipulation was afterwards filed in said suit in the United States Circuit Court and the suit was, by order of the court, dismissed at the cost of defendants in accordance with the stipulation, and that the defendants paid to Welte in his lifetime the said sum of $1,000 and the costs of suit. Plea No. 4 was substantially like plea No. 3, but set out the declaration in the former cause in full. That declaration consisted of three counts in trespass on the case and stated, among other things, that by reason of the injuries inflicted upon him by the broken saw, plaintiff became permanently injured in his sight and hearing and in his physical and mental condition.

To the special pleas above mentioned plaintiff filed a general demurrer, which the court sustained, and defend-

ants having excepted and abided by their said special pleas, issue was joined on the plea of not guilty and the case went to trial on that plea alone. There was a judgment in favor of the plaintiff for $1,250, and the defendants bring the case to this court by appeal.

The only question presented and argued by counsel is that made by the first assignment of error by which the action of the court in sustaining the demurrer to the special pleas is challenged. The facts pleaded show accord and satisfaction of all claims for damages caused by the negligence and wrongful act of defendants and a release by Charles J. Welte, the deceased, in his lifetime. It is contended by appellee, and was held by the trial court, that this will not bar the present action. The statute, chapter 70, Rev. Stat., under which this action was brought provides: Sec. 1. "Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then in every such case the person who or company or corporation which would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured," etc. This statute in its present form was enacted in 1853 and ever since has been the law in this state. It is the same as the New York statute passed in 1847 for the like purpose and is a substantial copy of sections 1 and 2 of the English statute, known as Lord Campbell's Act, which was enacted in 1846. Lord Campbell's Act is the source and origin of legislative action to relieve against the rule of the common law expressed by the maxim, *actio personalis moritur cum persona*, a personal action dies with a person. Since then the law, in form a substantial copy of the English statute, has been passed and adopted by most if not all of the states. In the long period since this statute became the law questions arising out of its construction, interpretation and application have been considered and decided by the courts of last resort in

England and many of the states.    The precise question in
the form made by the record in this case has never been
before our Supreme Court, though the consideration, dis-
cussion and interpretation of the statute as it was involved
in Holton v. Daly, Admx., 106 Ill. 131, is of controlling
weight in determining the rights of the parties in this pro-
ceeding.    In that case Michael Daly, husband of Mary
Daly, administratrix, brought suit for injuries caused by
the alleged negligence of defendant.    Pending litigation
and before judgment, Michael Daly died from the injuries
received, and Mary Daly was substituted as plaintiff in the
action, under the supposed authority of the Survival Act,
sec. 122, chap. 3, Rev. St.    The case was tried and the
jury instructed upon the theory that the elements of dam-
ages were the same as before the death of Daly.    In pass-
ing upon the merits of an instruction, to which objection
was made, the construction of both the Survival Act and
the Injuries Act was involved and the court held that in
case of death from injuries caused by negligence the right
of action survives alone to the personal representatives un-
der the Injuries Act for the benefit of the widow and next
of kin; but where the death of the injured party is due to
other causes the action survives under the Administration
or Survival Act for the benefit of the estate.    To reach this
conclusion, which was decisive of that case, it was for the
court to consider the purpose and review the history of
both acts and record judgment of the legislative intent re-
specting the nature of the action, rights of parties, and scope
of inquiry under the Injuries Act.    The decision, therefore,
is not without application here, and for want of better or
more cogent expression in discussion of the question be-
fore us we quote liberally from the opinion.    Referring to
section 1 of the statute now under consideration, the court
says:    "The cause of action is plainly the wrongful act,
neglect or default causing death, and not merely the death
itself.    Damages are recoverable, not for the killing, but,
as was observed by Comstock, J., in Dibble v. N. Y. & E.
R. R. Co., as quoted by him in his dissent in Whitford v.

Panama R. R. Co., 23 N. Y. 486, 'notwithstanding or in spite of the death which ensues. The statute recognizes but one cause of suit, and that is the wrong done, irrespective of its consequences.' And on this *principle* it has been held, if the injured person, in his lifetime, releases his claim for damages, his representatives cannot maintain any action upon his subsequent death resulting from the injury thus compounded." The court here decides the "principle" that under the statute there is but one cause of action and adopts with approval the necessary logical conclusion of numerous authorities cited that the injured person may release his claim for damages and bar an action after his death by his personal representatives. In further discussion of this statute the court observes: "The act of February 12, 1853, applies, as we have seen, by its own terms, to all cases where 'the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof'. As was said in City of Chicago v. Major, 18 Ill. 356, this 'language is very broad and comprehensive, embracing, in direct and positive terms, all cases where, if death had not ensued, the injured party could have maintained an action for the injury;' and, as we have already observed, it is the wrongful act, neglect or default that constitutes the cause of action. A right of action which, at common law, would have terminated at the death, is continued for the benefit of the wife, husband, etc., and its scope enlarged to embrace the injury resulting from the death. * * * It is not to be presumed it was intended there should be two causes of action, in distinct and different rights, by the same party plaintiff, for the same wrongful act, neglect or default. It would, obviously, be impossible to draw a line severing with accuracy the damages resulting from the permanent character of the injury, and its effect upon the capacity of the plaintiff for future usefulness in acquiring property, etc., from the actual loss to the wife, parent or child, in consequence of being

deprived of this same capacity by reason of the same injury resulting in death. * * * The recognition of the right in the deceàsed to have controlled this action in his life-time, leads logically to the conclusion that a recovery by him would have been a bar to recovery by his representative, and this because the cause of action would have been merged in the judgment. * * * It is true the measure of recovery is not the same, but the cause of action is, viz., the wrongful act, neglect or default." The precise question made here has been before the higher courts of other jurisdictions, including that of England, and the great weight of authority is that the injured person may, in his lifetime, release and acquit the defendant or person causing the injury from all damages and that such release or acquittance will bar an action by his personal representatives. Reed v. G. E. R. R. Co., L. R. 3, Q. B. 555; Littlewood v. Major, 89 N. Y. 24; Legg v. Britton, 64 Vt. 652; Southern Bell Tel. Co. v. Cassin, 111 Ga. 575; Hill v. Penn. R. R. Co., 178 Pa. St. R. 223.

Appellee calls attention to sections 2 and 4 of Lord Campbell's Act, and finds therein ground for the contention that the Reed case and other cases cited, which follow it, are not in point for the reason that our statute is without the provision of these sections. Evidently appellee did not have the Act before him when preparing his argument, or he misapprehended the meaning of section 3. By that section it is provided that action by the personal representatives shall be commenced within one year after the death, and that not more than one action shall lie for and in respect of the same subject-matter of complaint; clearly meaning and referring to the complaint in behalf of the widow and next of kin, however numerous, and restricting the right to sue in one as the representative of all. That restriction, under our statute, is made by decision in Washington v. L. & N. Ry. Co. et al., 136 Ill. 49. Section 4 is not as. appellee mistakenly and erroneously quotes it, for it relates to procedure under the act and has no bearing upon contentions in this case. So far as examined or our

Bruns v. Welte.

attention directed, the text-books seem to be in accord upon the construction of the statute given by the authorities cited. "When the right of action given by the statute is merely such as the deceased would have had if he had survived the injury, a release properly executed by him in his lifetime is a complete defense to an action by his personal representatives or others to recover damages for his death. The same rule is true where the statute is not a survival statute, but creates a new and distinct cause of action in favor of certain beneficiaries, if it provides that the right of action shall exist only in cases where the deceased himself might have maintained the action had he lived." 8 Am. & Eng. Ency. of Law, 870. Until the time of his death Charles J. Welte could not have maintained an action, for he had settled for his claim and released the defendant. So, within the express terms of the statute reasonably construed, no right of action accrued to the personal representatives. This statute, the Act of 1853, has been in force for upwards of fifty years. In all that time it does not appear, from the reported decisions of our Supreme Court, except in the case of Holton v. Daly, *supra*, that the statute has ever been invoked to impose a double liability for negligence causing injury resulting in death. The failure to prosecute such claim is not due to lack of occasion or circumstances under which it might have been asserted if the meaning of the statute now contended for by appellee prevailed. Injury through negligence, settlement with the injured party and his subsequent death from the injuries received, have been of frequent occurrence, and the failure to bring suit by or in behalf of the widow or next of kin, notwithstanding the settlement, may fairly be attributed to the popular and professional interpretation of the statute and understanding of the law, that such settlement was a bar. Throughout the period parties have been injured by negligence, suit brought, judgments obtained and satisfied in the lifetime of the injured party or the claims for damages settled or compounded in good faith in the understanding of all parties concerned, including those who, by

the death of the injured party, would become the widow or next of kin, that the judgment or settlement was final and complete as against any further liability of the defendant. To now hold otherwise and construe the statute that a right of action survives to the personal representatives, notwithstanding a satisfied judgment or settlement by the person injured, would operate as a retroactive amendment to the law affecting established property rights. If this is the meaning now to be given the statute, there is scarcely limit or termination of the litigation invited and immediately to follow. By operation of the law, so interpreted, the right of action in the widow and next of kin is postponed or suspended until the death of the injured person, after which such action may be brought without regard to the lapse of time intervening the negligence complained of and the commencement of the suit; and during this indefinite period, possibly twenty, thirty or fifty years, no settlement by judgment or otherwise may be effected between the parties concerned. To hold this would awaken and encourage controversy contrary to the policy of the law which, in wholesome restraint of prolonged dispute and litigation, favors compromise, settlement and repose. This lack of limitation is suggestive that the legislature never intended that the statute should be so construed. We are of opinion that the settlement and release made by Charles J. Welte in his lifetime is a complete bar to an action by his personal representatives for the benefit of his widow and next of kin, and that the court erred in sustaining the demurrer to the special pleas. The judgment of the Circuit Court will, therefore, be reversed and the cause remanded, with directions to overrule the demurrer and for further proceedings consistent with this opinion.

*Reversed and remanded.*